Jacobus *v.* Munn.

ANTHONY A. JACOBUS et al

*v.*

JOHN L. MUNN et al.

A trustee under a will had, for thirty years, the sole management of a large amount of real estate, involving great responsibility and care, and the expenditure of large sums of money, in repairing and renting and collecting the rents of several dwelling-houses thereon.—*Held*, that the fact that he, several years ago, received presents from one of the tenants and from some of the mechanics who were employed by him to repair the houses, which he openly admitted at the time and since, and which caused no loss whatever to the estate, was not sufficient proof of malfeasance to deprive him of his commissions, although he must account to the estate, of course, for the moneys so received by him. By the decree of this court on final hearing, he had been acquitted of the charges of intentional fraud and mismanagement made against him in the bill, in which the receiving of the presents was included.

Bill for relief. On exceptions to master's report.

*Mr. R. Wayne Parker* and *Mr. C. Parker,* for complainants.

*Mr. H. C. Pitney,* for defendant John L. Munn.

THE CHANCELLOR.

The bill in this cause was filed in 1878, by the grandchildren of Anthony A. Jacobus, deceased, to obtain possession of the property (the residue) which was devised and bequeathed to them by his will, subject to the support of their father and mother, and also for an account by the executor, Dr. John L. Munn, of his transactions and dealings with the estate. The will was made in March, 1848. The testator died in 1849. He appointed three executors, Abraham Ryerson, Philip Kingsley and Dr. Munn. The first never proved the will. The second proved it alone and served as executor. He died in or about 1852, and in the spring of that year Dr. Munn proved the will, and from that time discharged the duties of the office of executor. The will

provided for the support of Henry V. B. Jacobus and his wife, the parents of the complainants, for their respective lives, out of the proceeds, rents and profits of the residue; and it charged the residue with the support, maintenance and education of the grandchildren during their minority, and it directed that the residue should not come into their possession until the youngest of them should have attained to his majority. It provided, also, for an annuity of $500 to the testator's widow, for her life, payable by the executors quarterly, out of the rents and profits of the testator's real and personal estate, and it gave to each of three of the sisters of the testator the interest of $1,000 for life, also payable out of the rents and profits of his real and personal estate; the $1,000 in each case to go, at the death of the legatee, to her children. The estate consisted of some personal property (according to the inventory it amounted to $7,542.25), and some real estate here, and fourteen houses and lots in the city of New York. Dr. Munn, after he proved the will, took care of the estate, letting the property in New York and receiving the rents therefrom. The bill charges him with waste and mismanagement in letting the property below its value; making extravagant and unnecessary repairs; with failing to invest the balances in his hands from time to time, and with receiving presents from one of the tenants; and it alleges that the complainants have grave reason to suspect that he has received presents, or some valuable consideration or commissions, from the workmen employed by him to do the repairs. Dr. Munn filed his accounts from time to time from 1854 up to 1879, almost every year, in the surrogate's office of Essex county, and, up to the account of 1875, they were passed. To that account exceptions were filed, and, under them, it was referred to an auditor, who reported thereon in 1877, but before the court decided the matter the bill in this cause was filed. It was filed July 12th, 1878. In this suit, by a decree made on the 11th of July, 1879, it was decreed that the residue vested in the grandchildren when the youngest of them came of age, subject to the charge for the support of their father and mother, and the decree directed that the complainants secure, by mortgage of the real estate to Dr. Munn as trustee

Jacobus v. Munn.

under the will, certain specified annual sums for the support of their father and mother, and that on the approval and delivery of the mortgage, the trustees deliver over the trust property to them, subject to and pending the accounting by the trustee; and it was thereby declared that this court was of opinion that the charges of intentional fraud and mismanagement, made in the bill against Dr. Munn, were not sustained by the proofs; also, that the accounts in the Essex orphans' court were not conclusive on the complainants, and that they were entitled to impeach, surcharge and falsify them, and it was thereupon referred to William Paterson, esq., one of the masters of this court, to take and state the accounts of Dr. Munn from the beginning, and fix the allowance to be paid to him for his services as executor and trustee; the master to take into account, in fixing his allowance, the nature of his services in caring for and renting the real estate, and collecting the rents thereof. By a subsequent explanatory order of July 8th, 1881, it was declared that all matters contained in Dr. Munn's account, including the question whether he is entitled to commissions at all, were referred to the master, and that it was not intended by the original decree to commend or ratify, or to disapprove the management of the estate by Mr. Munn, but to leave to the master the settlement of the accounts. The master, by his report, approved the conduct of Dr. Munn in his management of the trust, except as to the receipt of money for his own benefit, by way of gift, from one of the tenants of the New York houses, and from persons employed to make repairs to those houses, with which, however, he did not charge him, being unable to ascertain the amount thereof, but recommended that instead of charging him therewith he be required to pay the costs of this suit, and suitable counsel fees to the complainants' counsel. And he fixed the executor's fees at five per cent. on the moneys he had collected, which moneys amounted to $232,414.96.

A very careful examination and consideration of the testimony have led me to the conclusion that Dr. Munn's management of the estate has been fair, careful and judicious. The will created an active trust in the executor as to the rents of the real estate in question, and that trust devolved on him the duty of keeping the

property in proper tenantable condition. He appears to have done so, and though he made some additions which may be regarded as improvements, they were not only all for the benefit of the property absolutely, but also as regards its rental value, and they seem to have been made with a view, and merely with a view, to increasing the value of the property in the latter respect. Nor does there appear to have been any extravagance or carelessness in making them or any of the repairs. One of the complainants' witnesses, Mr. Burnham, who has had special charge of the houses since October, 1879, says he thinks the expense of keeping them in repair, while Dr. Munn had charge of them, ought not to have exceeded $1,500 a year. The average expenditure for repairs, including the improvements before referred to, during the time, was, in fact, about $1,530 a year. Here were fourteen houses, all occupied by tenants, and all, except two, old. All except those two have been built over forty years, and they have been built about twenty years. An average expenditure of $110 a year on each of those houses is, according to the evidence, in nowise excessive.

Nor is there any evidence of dereliction of duty on the part of Dr. Munn in not investing balances in his hands, nor any evidence that he used the money of the estate for his own purposes, but the proof is to the contrary. He appears to have made deposits of the money of the estate, in his name, as executor, in the savings bank, and to have put his own money in with it. On the other hand, he kept the money of the estate in two banks of discount and deposit—one in New York and the other in Morristown. In one of them, he says, he had $14,000 of his own money, besides money of the estate, and drew the money as he wanted it for his own purposes, or for the estate. He was engaged in no business, however, and had no occasion to borrow money or use his credit. It does not appear that he ever used any of the money of the estate for his own purposes.

That he received money from one of the tenants, and from some of the persons employed to do work on the houses, he freely admits. In one instance he received $50 a year for five years from a tenant. And this appears to have been the only tenant

from whom he received money for his own use in connection with, and on account of the business of the estate, and the $250 all he received from him. In some other instances he received small sums by way of gifts on payment of bills for work done. These appear to have been voluntary offerings to him, and to have been paid in consideration of his promptness in making payment, or his trouble in coming to New York to make the payments; and it does not appear that they were given to him in anywise at the expense of the estate, or to its detriment. He made no concealment of the fact that he received them, and appears not to have been aware that in accepting them he was doing anything incompatible with his strict duty as a trustee. Such transactions on the part of a trustee, however, are obviously not allowable in his dealings with the trust estate, and he is accountable to the estate for all such moneys received by him.

The master was unable to ascertain what amount Dr. Munn so received, and the latter, while he appears to have frankly testified in regard to the matter, was unable to fix the amount with any certainty. The master, as before stated, has not charged him with the moneys in the account, but recommends (substantially) that in consideration thereof he be required to pay in satisfaction to the estate, and as punishment for his illegal conduct in receiving them, the costs of this suit, and such reasonable counsel fee to the complainants' counsel as the chancellor may fix. I am not satisfied to dispose of the matter in that way. The proper way to deal with it, under the circumstances, is, inasmuch as the amount cannot be exactly ascertained, to deduct from the commissions a sum probably sufficient to cover it and interest, but not so large as to do him injustice. He appears to have been faithful to his trust except where he has erred from want of knowledge of his duty. The estate has lost nothing from that want of knowledge or circumspection on his part. He has served it for many years in taking care of the property, and renting the houses and collecting the rents. For this service he is entitled to just compensation. The master reports that Dr. Munn has had the entire charge of the estate, and the sole management thereof, for nearly thirty years; that during that time he has received more

than $230,000, and has accounted for all of it; that but little, if anything, has been lost or not collected, and that no imputation has been made against him in that respect, nor any charge of personal malfeasance or appropriation of moneys to his individual use or benefit; that he has accounted at proper times, and since 1862, annually, to and under the direction of the proper accounting officers of the county, and his settlements have been matters of record; that he has applied to and received, and followed the instructions of this court in the payment of moneys and the execution of trusts under the will; that, considering the facts and circumstances connected with the trust since it came to his hands, the amount of money received and disbursed by him, the nature of the estate, the character and class of the property, the difficulties and trouble that must have attended the supervision of it, the care required in procuring and retaining proper tenants, and collecting the rents, keeping the houses in such repair and condition as to secure desirable tenants, meet the demand for more modern improvements, and comply with sanitary and other regulations of the municipal authorities, the nature and variety of the trusts of the will, the demands upon the time and services of the trustee, the responsibility devolving on him, and the fact that the property has been transferred to the complainants in fair condition, with the benefit of the improvements, and with no charges or liens thereon, created or left by him, and no arrears, the trustee should be allowed the sum of $11,620.74, as a compensation in gross for his commissions and services; being five per cent. on the receipts. This award of compensation appears to me to be no more than just in view of those considerations, all of which are well founded. This court has, by its decree, expressly acquitted the trustee of the charge of intentional fraud and mismanagement. He should not, therefore, be punished for his error in accepting the presents. Where a trustee has been guilty of a breach of his trust or of vexatious or improper conduct, the court can withhold all compensation, or allow him such compensation as will pay for the value of his services so far as they have been beneficial to the estate. *Perry on Trusts § 919; Moore* v. *Zabriskie, 3 C. E. Gr. 51.* The

moneys received by the trustee from the tenant, and persons who did work on the property in New York, probably amount to not more than $500. If he be charged with this sum, and $300 for interest, full justice will probably be done to the estate and no injustice to him, under the circumstances; $800 should be deducted from the amount awarded for compensation, and the trustee, having been acquitted of all intentional fraud and mismanagement, should have his costs of suit out of the estate.

The second exception on the part of the complainants will be allowed, and the rest overruled; and the exception on the part of the defendant will be allowed. Under the circumstances, the costs of the exceptions on both sides should be paid out of the estate.